WHITECO METROCOM CORPORATION (Whiteco Industries, Inc.); James Brown; and Ruth Brown Appellants,

v.

COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, DEPARTMENT OF HIGHWAYS, Appellee.

No. 1998–CA–001356–MR.

Court of Appeals of Kentucky.

July 30, 1999.

Rehearing Denied Sept. 24, 1999.

Discretionary Review Denied by Supreme Court April 12, 2000.

---

Donald Duff, Frankfort, Kentucky, for Appellant.

John B. Baughman, Holland B. Spade, Frankfort, Kentucky, for Appellee.

Before: EMBERTON, GARDNER and MILLER, Judges.

## OPINION

EMBERTON, Judge.

This appeal challenges the propriety of the summary determination that the appellee, Transportation Cabinet, was entitled to an injunction ordering removal of a billboard owned by appellant, Whiteco Metrocom Corporation. The basis of the judgment was that it lost its nonconforming use status upon being destroyed, substantially changed or replaced as a result of storm damage. We affirm.

The facts are neither complex nor in dispute. The billboard is located on property owned by appellants, James and Ruth Brown, near the Pennyrile Parkway in Hopkins County and has been in place at that location since 1967. The billboard was operated legally from 1967 until 1990 when a statutory change altered its status to that of a nonconforming advertising device. It continued in that status until 1995 when it was damaged in a storm. Subsequent repair of the substantial storm damage forms the basis for the Cabinet's contention that the reconstruction exceeded the scope of "routine maintenance" permitted under Kentucky regulations. With anything more than routine maintenance, such as repairs or component replacement, the nonconforming status is lost and the billboard becomes illegal. After citing Whiteco for violation of the advertising device regulations, the Cabinet sought an injunction in the circuit court requiring removal of the billboard. The trial judge subsequently granted the Cabinet's motion for summary judgment and issued a permanent injunction requiring Whiteco to correct and abate the violation by removal of the billboard.

Whiteco makes five arguments in its appeal: (1) that the regulations upon which the Cabinet relies are unenforceable because they were adopted without proper statutory authority; (2) that the regulations are unenforceable because they are more stringent than federal law and regulations on the subject; (3) that the regula-tions are void for vagueness; (4) that the circuit court lacked jurisdiction to consider the matter; and (5) that the summary judgment was improvidently granted.

■ As background for our discussion of Whiteco's various contentions we cite *Diemer v. Commonwealth, Transportation Cabinet*, Ky., 786 S.W.2d 861 (1990), for its overview of Kentucky billboard legislation; *Southeastern Displays, Inc. v. Ward*, Ky., 414 S.W.2d 573 (1967), which settled the question of the highway department's authority to adopt such regulations against the challenge that Kentucky Revised Statute (KRS) 177.860, in conferring such authority, unconstitutionally delegated legislative power to the executive branch; and *Moore v. Ward*, Ky., 377 S.W.2d 881 (1964), which confirmed the constitutionality of the Kentucky Billboard Act, as well as the relationship between the federal government and the state agency in the area of billboard enforcement. Whiteco's initial complaint, however, is that KRS 177.860 is the only portion of the Kentucky Billboard Act (KRS 177.830—KRS 177.890) that authorizes adoption of regulations and that that section makes no mention of regulations regarding nonconforming billboards. The Cabinet responds that KRS 177.890, which authorizes the commissioner of highways to enter into agreements with the United States for purposes of carrying out the national policy with regard to highways within the Commonwealth, is ample authority for the adoption of regulations relating to nonconforming billboards. We agree.

■ While it is true that KRS 177.860 does not specifically reference nonconforming billboards, it is also clear that that section is but one part of a comprehensive scheme of legislation directed at regulating advertising devices. As noted by the trial judge, Kentucky has entered into agreements with the federal government under the authority of KRS 177.890 that require the Cabinet to control billboard advertising "in accordance with the provisions of Title 23 of the U.S.Code." We are con-

vinced that inherent in the Cabinet's authority to enter into these agreements is the authority to prescribe through appropriate regulation reasonable standards for implementing the agreements. *Southeastern Displays, supra.* However, as noted by the Supreme Court in *Flying J Travel Plaza v. Commonwealth, Transportation Cabinet,* Ky., 928 S.W.2d 344 (1996), such regulations are valid only when found to be within the framework of the policy defined by the legislation. Our primary task in this appeal is to determine whether the regulations governing nonconforming billboards fall within that basic principle.

In *Diemer, supra,* we find guidance in ascertaining not only the purpose for the legislature's enactment of the Kentucky Billboard Act but also the role of the courts in interpreting it:

> Because we recognize that one of the primary purposes of the Kentucky statute was to conform to the federal statute and thus qualify for the maximum available in federal funds, we can look to the federal statute for historical perspective.... It is our responsibility to read the statutes of the General Assembly so as to save their constitutionality whenever such can be done consistent with reason and common sense.

786 S.W.2d at 863. Thus, our analysis focuses upon federal legislation as an aid in determining whether the regulations fit within the framework of stated Kentucky policy on billboards.

23 C.F.R. § 750.707(d)(5) sets out the following federal regulations as to termination of the nonconforming status of a sign:

> The sign must remain substantially the same as it was on the effective date of the State law or regulations. Reasonable repair and maintenance of the sign, including a change of advertising message, is not a change which would terminate nonconforming rights. *Each State shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights.* (Emphasis added).

Subsection (e) of the same regulation provides the federal policy as to compensation:

> (e) *Just compensation.* The States are required to pay just compensation for the removal of nonconforming *lawfully existing* signs in accordance with the terms of 23 U.S.C. 131 and the provisions of Subpart D, Part 750, Chapter I, 23 CFR. *The conditions which establish a right to maintain a nonconforming sign and therefore the right to compensation must pertain at the time it is acquired or removed.* (Emphasis added).

Viewing the Kentucky regulatory scheme in the light of this federal model confirms its consistency with both federal and state statutory frameworks. We thus perceive no basis for attacking the regulations as being without statutory authority.

■ Similarly, we find no merit in Whiteco's contentions that the regulations are void for being more stringent than the federal law or that they are void for vagueness. Supporting its argument, Whiteco calls to our attention that while the federal regulations allow for "reasonable repair," Kentucky permits nothing other than routine maintenance. A reading of the pertinent regulation dispels that contention:

> Routine maintenance means, as it relates to a nonconforming advertising device:
>
> (a) The maintenance of an advertising device which is limited to replacement of nuts and bolts, nailing, riveting or welding, cleaning and painting, or manipulating to level or plumb the device;
>
> (b) The routine change of message; and
>
> (c) The lamination or preparation of existing panels or facings at a location other than that of the advertising device.
>
> (d) Routine maintenance shall not mean:

1. Adding guys or struts for the stabilization of the device or substantially changing the device; or

2. Replacement or repair of panels, poles, or facings or the addition of new panels, poles, or facings[.]

603 KAR 3:080, Section 1(32). Not only do we find this regulation to be fully in keeping with the spirit and letter of similar federal regulations, we are convinced that it plainly spells out what does and does not constitute "routine maintenance" and cannot therefore be construed to be unconstitutionally vague. Even if the term "destroyed" could be considered vague when read in isolation, it is not so when considered in the context of the regulatory scheme as a whole.

■ Likewise, 23 C.F.R. § 750.707(e) is dispositive of Whiteco's contention that payment of compensation is mandatory under the federal scheme. Payment of compensation is mandated only so long as an advertising device retains its nonconforming character. Once that status is lost, payment of compensation is not required. The rationale for this distinction lies in the federal and state intent to gradually phase out these nonconforming devices as their natural life is exhausted.

■ Last in this regard, we note the adoption of stricter standards is specifically authorized by federal regulation:

The purpose of these policies and requirements is to assure that there is effective State control of outdoor advertising in areas adjacent to Interstate and Federal-aid primary highways. *Nothing in this subpart shall be construed to prevent a State from establishing more stringent outdoor advertising control requirements along Interstate and Primary Systems than provided herein.* (Emphasis added).

23 C.F.R. § 750.701.

■ As to Whiteco's complaint that the circuit court was without jurisdiction to proceed in this case, our review of the judgment discloses no ruling by the trial judge on this issue or any subsequent request for a specific ruling by Whiteco. The crux of Whiteco's challenge to the authority of the circuit court to hear this matter is the contention that KRS 177.841(2) does not apply to its billboard erected in 1969 because the plain language of KRS 177.842 limits the application of KRS 177.841(2) to outdoor advertising devices erected after January 1, 1976. The Cabinet responds that the statute is applicable to the billboard in its nonconforming condition that existed first in 1995. We view this as a matter of pure statutory construction not impinging upon the subject matter jurisdiction of the court to hear the controversy. Thus, because of the lack of a ruling by the circuit judge, we are precluded from addressing the question by the dictates of Kentucky Rules of Civil Procedure (CR) 52.04.

Finally, we are convinced that because this case was presented to the trial judge on undisputed facts, he was well within his authority under *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991), to dispose of the matter summarily.

The judgment of the Hopkins Circuit Court is affirmed.

GARDNER, Judge, concurs.

MILLER, Judge, dissents by separate opinion.

MILLER, Judge, dissenting.

I dissent. The uncontroverted evidence establishes that Whiteco's billboard was located more than 660 feet from the Pennyrile Parkway and outside an urban area. The Cabinet relies upon both express and implied delegations of power under the Billboard Act to promulgate the questionable regulations affecting Whiteco's billboard.

Under the apparent authority of KRS 177.860 and KRS 177.890, the Cabinet promulgated 603 KAR 3:080 Section 1(20) and Section 3(3). In effect, these regulations created an additional exception to KRS

177.841(2),[1] to wit: a "nonconforming use." Pursuant thereto, a billboard clearly prohibited under subsection 2, such as Whiteco's, would be exempted if it existed prior to enactment of the Billboard Act.[2] Under the specific auspices of KRS 177.890, the Cabinet grafted the regulatory exception of nonconforming use upon subsection 2. I view such regulatory exception as directly repugnant to the plain language of KRS 177.841 and as clearly beyond the scope of power delegated to the Cabinet by the Billboard Act. My ratiocination centers upon what I deem proper construction of KRS 177.841, which states as follows:

**Billboard advertising prohibited—Exceptions.—** (1) *Except as otherwise provided in KRS 177.830 to 177.890*, the erection or maintenance of any advertising device upon or within six hundred and sixty (660) feet of the right of way of any interstate highway or federal aid primary highway is prohibited.

(2) The erection or maintenance of any advertising device located outside of an urban area and beyond six hundred and sixty (660) feet of the right-of-way which is legible and/or identifiable from the main traveled way of any interstate highway or federal aid primary highway is prohibited with the exception of:

(a) Directional and official signs and notices;

(b) Signs advertising the sale or lease of property upon which they are located; or

(c) Signs advertising activities conducted on the property on which they are located. (Emphasis added.)

Subsection 1 of the above statute deals with legislative prohibition upon billboards located within 660 feet of a highway; whereas, subsection 2 deals with such prohibition upon billboards located beyond 660 feet and in a rural area. Subsection 1, however, contains the following caveat that is conspicuously absent from subsection 2: "Except as otherwise provided in KRS 177.830 to 177.890...." As such circumscribing language was specifically included in subsection 1 but excluded in subsection 2, I can only conclude that the General Assembly did not intend subsection 2's general prohibition upon billboards beyond 660 feet to be excepted by the provisions of KRS 177.830—.890. Indeed, subsection 2 contains its own narrow exceptions in (a)—(c). In short, I think the Cabinet may utilize provisions of KRS 177.830—.890 as authority to promulgate exceptions to subsection 1 but may not rely upon such provisions as authority to promulgate exceptions to subsection 2.

Through KRS 177.841, I believe the General Assembly unmistakably has drawn a clear demarcation between billboards located within 660 feet and those billboards located beyond. The general prohibition against the former billboards is tempered by a plethora of exceptions as authorized by KRS 177.830—.890; conversely, the general prohibition against the latter billboards is only excepted in three instances as found in KRS 177.841(2)(a)—(c). The more stringent prohibition upon billboards beyond 660 feet and outside of an urban area is consistent with one of the General Assembly's proclaimed purposes of the Billboard Act, that is "[t]o preserve ... the natural scenic beauty or the aesthetic features of the ... interstate highways, limited-access highways, federal-aid primary highways, turnpikes, and adjacent areas[.]" KRS 177.850(4).

In sum, I am of the opinion that subsection 2's prohibition upon billboards located beyond 660 feet is absolute with only the exceptions of (a)—(c) and that the Cabinet may not rely upon the provisions of KRS 177.830—.890 as authority to promulgate exceptions to subsection 2. The Cabinet, therefore, cannot properly utilize KRS

---

**1.** Hereinafter, KRS 177.841(2) will sometimes be referred to as subsection 2, and, likewise, KRS 177.841(1) will be referred to as subsection 1.

**2.** In this manner, the Cabinet sought not to condemn and pay for billboards beyond 660 feet but to allow natural attrition of same.

177.890 as authority to promulgate the "nonconforming use" exception to subsection 2's general prohibition upon billboards beyond 660 feet. As Whiteco's billboard clearly violated subsection 2, the Cabinet may only condemn same and pay just compensation therefor. Ky. Const. § 13; KRS 177.867. I would remand this case for appropriate condemnation proceedings consistent with this opinion.