**OUTDOOR WEST OF TENNESSEE, INC. (Lamar Advertising of Tri–Cities)**

v.

**CITY OF JOHNSON CITY.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

June 26, 2000.

Permission to Appeal Denied by Supreme Court Feb. 12, 2001.

only one face. We affirm the Judgment of the Trial Court.

### Background

Appellee, Lamar Advertising of Tri–Cities ("Lamar"), filed eleven Applications for Sign Permits with Appellant, the City of Johnson City ("the City"), seeking to enlarge the size of eleven billboards and/or to change those billboards from single-faced to double-faced, so as to provide more advertising space on each sign. Mr. Richard Drummond testified that he was general manager of Outdoor West of Tennessee, Inc., the original company that filed requests and obtained State permits for ten out of the eleven signs which are at issue in this case.[1] That company then became Outdoor Communications, Inc., and Drummond was general manager of the new company. Outdoor Communications, Inc., then merged with Lamar Advertising, a national billboard advertising company, and became Lamar Advertising of Tri–Cities, Inc. Drummond is currently Vice–President and General Manager of that company. The gross revenue of Lamar exceeds $5 million annually. From the record before us, there are one hundred and one billboards currently erected in Johnson City. Lamar owns eighty of those billboards. No additional billboards will be constructed in Johnson City, because in 1988 the city enacted a local ordinance prohibiting new billboards.

The eleven billboards at issue were built before the enactment of the 1988 ordinance. Lamar contends that those billboards were permitted uses at the time they were constructed under the then-existing city ordinances, and that the requested sign permits for upgrading those signs are authorized under T.C.A. § 13–7–208, the Grandfather Statute. Mr. John Campbell, City Manager of the City of Johnson City, declined to issue the requested sign permits. By letter of Janu-

Earl P. Booze, James D. Culp and James H. Epps, III, Johnson City, for appellant, City of Johnson City.

Thomas C. Jessee, Johnson City, for appellee, Outdoor West of Tennessee, Inc. (Lamar Advertising of Tri–Cities).

Richard M. Currie, Jr. and Timothy B. McConnell, Kingsport, Amicus Curiae Brief for Scenic Tennessee.

### OPINION

SWINEY, J., delivered the opinion of the court, in which GODDARD, P.J., and SUSANO, J., joined.

The City of Johnson City appeals the Trial Court's Order requiring the City to issue eleven permits to Outdoor West of Tennessee, Inc. (Lamar Advertising of Tri–Cities), permitting Outdoor West to increase the size and/or double-face eleven billboards, some of which previously had

---

1. The eleventh sign is not adjacent to a State-controlled artery and therefore does not require a State permit.

ary 26, 1996, Mr. Campbell advised counsel for Lamar:

> I am in receipt of various applications which have been tendered on behalf of Outdoor West, Inc. for permits to expand the billboards located at each of the above referenced locations. After careful consideration, I must respectfully deny Outdoor West's request for those permits.
>
> It is the opinion of the City of Johnson City that Outdoor West's proposed construction does not comply with the City's sign ordinance, and that T.C.A. Section 13–7–208 does not prevent the sign ordinance from being applicable.

At trial, Mr. Campbell testified that the sole basis for the City's denial of the requested sign permits was that the current zoning ordinance, enacted in 1988, prohibits additional billboards. There has been no finding that the proposed expansions constitute a nuisance to adjoining landowners or exceeds the property lines on which the signs are now located. Mr. Campbell testified he doesn't know whether all of the signs applied for have State permits or whether the signs comply with earlier zoning ordinances in effect in the City prior to the 1988 zoning ordinance banning billboards. He did not investigate these issues, and does not think anyone else investigated them for the City. He testified that, from 1981 until 1988, the zoning ordinance permitted billboards not larger than 672 sq. ft.

Mr. Drummond testified that billboards are produced in two standard sizes, a 300 sq. ft. size for surface roads throughout a city, and a 672 sq. ft. size for freeway systems and other major thoroughfares. Mr. Drummond testified that these requested eleven sign permits, requesting upgrades to signs which have been present in Johnson City since 1981 or before, were necessary for several reasons:

> One reason is to modernize the existing structures to 1999 requirements for the industry. The industry is a standardized industry where production has to be produced that will fit here and Nashville, and Dallas, etc., just like thirty second TV spots. They need to be 30 seconds no matter where they're at. So sizing here needs to be conforming—to be conforming on a national level.
>
> *      *      *
>
> [Another reason is] Safety issues. One of these has been held in abeyance since 1981. There are safety concerns that we need to upgrade. In addition, is that we've been frozen in time since '81. And as everybody knows, the City has grown rapidly since then, and we are running out of inventory to satisfy the demand from our clients. So we have to maximize our existing inventory to accept clients that request coverage in Johnson City. And right now, we can't do that in all the times and we are losing financial revenue because of that.

Mr. Drummond also testified that the size of the signs was to be enlarged so that, "as opposed to having one advertiser, we can have two. And that's our intent, is to be able to offer our services to an additional advertiser, which we can't now with the smaller sign." He intends to upgrade "a great number" of Lamar's signs to 672 feet, and he filed these eleven sign permit applications first, with "several others waiting once we know the outcome [of this litigation]."

The Trial Court reviewed the eleven sign permit Applications, Mr. Campbell's letter denying the eleven requests for sign permits, the Johnson City Zoning Ordinances for 1963, 1972, 1981 and 1988, and heard the testimony of the two above-quoted witnesses. The Trial Court then took the case under advisement and, on September 27, 1999, filed a Memorandum Opinion and Final Order. The Trial Court found that "T.C.A. § 13–7–208(c) permits, or grandfathers, the subject billboards as a non-conforming use." The Trial Court then found that "[t]he Defendant's City Ordinances, Article VII, Signs Regulations, 7.41, banning 'Off-premise Advertis-

ing Signs' is inapplicable ... [because it] ... is prospective only; therefore the ban does not apply to the subject billboards that were existing at the time of the Defendant's ban of billboards." Accordingly, the Trial Court ordered that the City of Johnson City issue the requested sign permits.

### Discussion

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Davis v. Inman,* 974 S.W.2d 689, 692 (Tenn.1998). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293 (Tenn.1997).

The City of Johnson City appeals and raises one issue:

Whether the Trial Court erred in holding that the eleven (11) billboards for which applications for sign permits had been filed with the City of Johnson City, qualify for the protection pursuant [to] Tenn. Code Ann. § 13–7–208(d), thereby compelling the City of Johnson City to issue the necessary building permits.

As stated, the Trial Court based its holding on T.C.A. § 13–7–208(c), which provides:

(c) Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. No building permit or like permission for construction or landscaping shall be denied to an industry or business seeking to expand and continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

A grandfather clause is defined as "an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction." Black's Law Dictionary 629 (5th ed. 1979). A grandfather clause exception in a statute must be construed strictly against the party who seeks to come within the exception. *Teague v. Campbell County,* 920 S.W.2d 219, 221 (Tenn.Ct.App.1995). Lamar as the party seeking the protection of the statute has the burden of proving that its sign is a pre-existing non-conforming use which qualifies for protection. *Lamar Advertising of Tennessee, Inc. v. City of Knoxville,* 905 S.W.2d 175, 176 (Tenn.Ct. App.1995). In *Rives v. City of Clarksville,* 618 S.W.2d 502 (Tenn.Ct.App.1981), this Court found that a plaintiff must make two threshold showings before invoking the protection of T.C.A. § 13–7–208: (1) that there has been a change in zoning (either adoption of zoning where none existed previously, or an alteration in zoning restrictions), and (2) that the use to which they put their land was permitted prior to the zoning change. There is no dispute that the first requirement was met as a result of the zoning change in 1988. Likewise, from the record before us, there appears to be no real dispute that the second requirement has also been met. The initial threshold requirements necessary to trigger T.C.A. § 13–7–208 are present.

■ The City states that the Trial Court's judgment in this case was "pursuant to Tenn. Code Ann. § 13–7–208(d)." The judgment, however, cites "T.C.A. § 13–7–208(c)." Subsection (c) of that statute applies to situations in which the business seeks to expand, and provides that in such cases, the petitioner

> shall be allowed to expand operation and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning. . . .

Subsection (d) applies to situations in which the business seeks to demolish and rebuild, and provides that in such cases, the petitioner

> shall be allowed to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change. . . .

The City argues that subsection (d) applies, that Lamar has failed to prove that the destruction and reconstruction is "necessary to the conduct of such industry or business," and, therefore, the judgment of the Trial Court must be reversed. We agree with the City that subsection (d) appears to require a higher standard of proof by Lamar, since under that section, Lamar must show that the reconstruction is "necessary to the conduct of [the] industry or business." The record in this case is not clear as to whether Lamar plans for all of the existing signs to be demolished and new signs installed, thus implicating subsection (d), or whether, in some cases, the existing sign is to be retained but enlarged, thus implicating subsection (c). The sign permit applications indicate that eight 300 sq. ft. double-face signs are to be enlarged to 672 sq. ft. double-face signs. Three 672 sq. ft. single-face signs are to be converted to double-face signs. Mr. Richard Drummond testified for Lamar that the company plans to "modernize" the billboards to standardize the sizes, to "up-grade" for safety reasons and to "maximize our existing inventory to accept clients that request coverage in Johnson City." He testified that, depending on the location, and whether the traffic count would justify the decision, some signs would be taken down and changed from multiple wooden pole to unipole steel construction, which creates a larger and safer billboard, generates greater revenue, and is very expensive to install. Since at least *some* of the billboards are intended for demolition and replacement, we agree with the City that Lamar must show that the proposed action is "necessary to the conduct of the business."

■ Among the reasons justifying the destruction and reconstruction, Mr. Drummond testified that the company loses revenue when property is sold and a sign taken down by new owners, because the zoning in Johnson City will not permit the sign being moved to another location. In such cases, all of Lamar's revenue is permanently lost. Also, the company will soon begin losing revenue due to the State tobacco settlement, which will prevent tobacco companies, representing 10 to 19% of Lamar's billboard clients, from advertising on billboards. Furthermore, advertisements for billboards are no longer painted individually. Instead, they are sent to the billboard company, i.e., Lamar, from the client in the form of plastic sheets, of uniform size and construction, and the billboards on which they are to be installed must be uniform to accept the ads. Lamar owns most of the billboards in Johnson City, and they must upgrade and maintain them according to prevailing industry standards in order to keep their advertising clients. We find the preponderance of this evidence shows that upgrading and/or replacing its billboards is necessary to the conduct of Lamar's business and reject the City's argument to the contrary.

We hold that Lamar has satisfied the requirements of both subsection (d) and subsection (c) of T.C.A. § 13–7–208. This being so, a determination of whether sub-

section (c) or subsection (d) is the controlling subsection is unnecessary under the facts of this case.

An *Amicus Curiae* Brief was filed by Scenic Tennessee, self-described as

> an association of individuals and corporations committed to protecting and promoting Tennessee's scenic heritage by working with government and municipal agencies, experts in planning and zoning, and local communities to develop appropriate sign ordinances to protect this State's natural beauty from billboard blight.

■ Scenic America makes two related public policy arguments in support of the issue raised by the City of Johnson City. The *organization* says that the application of T.C.A. § 13–7–208, the grandfather statute, in this case "would yield a result contrary to the health, safety and welfare of the people of the City of Johnson City," and that the statute "was not intended to allow the billboard industry to circumvent municipal ordinances developed for the protection and enhancement of communities throughout this State." We recognize that the City of Johnson City, by enacting its 1988 Ordinance prohibiting construction of new billboards, has lawfully determined that the presence of billboards in that City is "contrary to the health safety and welfare of the people of . . . Johnson City." However, T.C.A. § 13–7–208 recognizes a competing interest which the State of Tennessee has determined to protect, i.e., *the right of businesses in Tennessee to continue those businesses, including the rights to expand and to demolish and rebuild on premises where they are already located, even though more restrictive zoning is enacted.* We are not at liberty to ignore the State's statutorily declared legitimate interests in order to promote the City's legitimate, later-asserted regulatory interests. While we do not disagree with Scenic Tennessee's argument that the City of Johnson City has authority to regulate existing billboards, that regulation cannot contravene the provisions of T.C.A. § 13–

7–208. Since T.C.A. § 13–7–208 clearly permits a business to demolish, rebuild, and expand so long as the requirements of that statute are satisfied, Scenic America's first argument must fail under T.C.A. § 13–7–208(c) and (d).

■ Scenic Tennessee next states that the grandfather clause does not apply to billboards because "billboards are not an 'establishment' within the meaning of Tennessee Code Annotated § 13–7–208." Scenic Tennessee contends that the legislature did not intend to include billboards in the class of business properties afforded the protection of the grandfather statute. We quote from Scenic's brief:

> The statute does not define the term "establishment"; however, Black's Law Dictionary defines an establishment as "an institution or place of business, with its fixtures and organized staff." Moreover, while no Tennessee court has addressed the issue of whether a billboard is an "establishment," the Court of Appeals for New Mexico, in construing similar language contained in a zoning ordinance, has held that it is not. . . . The business "establishment" of Lamar Advertising with its fixtures and organized staff is located at Tri–City Airport Station, Blountville, Tennessee. Lamar Advertising is not seeking to expand its establishment as a result of changes in zoning, instead, it seeks to expand its billboards, a product of the establishment.

We have reviewed the legislative history of the grandfather statute and find nothing which supports such an existential view. The goal of the legislature was to protect established businesses from later-enacted municipal zoning which would exclude them. The billboards in this case are the business establishments of Lamar just as a parcel of land with folding tables set out on it may be the business establishment of a flea market. The home office is not the only, or even the primary, income-producing "business establishment." Additional-

ly, Lamar's employees are on site at the billboards from time to time working on and at the billboards. These employees are working in furtherance of Lamar's business at that site.

■ It is not for this Court to re-write the grandfather statute so as to exclude one type of business from its protection while affording the protection to others. It is an impermissible stretch for this Court to suppose that the legislature intended to protect business warehouses and other business buildings from later-enacted zoning while excluding business signs, as "[t]he most basic principle of statutory construction is to ascertain and give effect to the Legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *See Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn.1996). Each billboard is one of Lamar's places of business. While Scenic America's argument on the issue raised by the City of Johnson City is well made, it is unsupported by the law of this State and unpersuasive.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the City of Johnson City.