IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2007 Session

UNIVERSAL OUTDOOR, INC., ET AL. V. TENNESSEE DEPARTMENT
OF TRANSPORTATION

Appeal from the Chancery Court for Davidson County
No. 04-887-IV     Richard H. Dinkins, Chancellor

No. M2006-02212-COA-R3-CV - Filed September 24, 2008

The Tennessee Department of Transportation ordered the removal of a long-existing billboard to permit the expansion of a highway right-of-way. The billboard's owner removed the sign and re-installed it on another part of its leasehold, within 30 feet of its original location. The Department refused to renew the permit for the sign or to issue a new permit because its new location did not comply with the requirements of The Billboard Regulation and Control Act of 1972. The owner challenged that decision at an administrative hearing, arguing that it was entitled to maintain the non-conforming billboard at its new location under the "grandfathering" clause of the zoning statute. The administrative law judge disagreed and ordered the billboard's removal. The chancery court affirmed the decision of the administrative law judge. We affirm the chancery court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and JEFFREY F. STEWART, JJ., joined.

Robert L. J. Spence, Jr., Patti C. Bowlan, Memphis, Tennessee, for the appellants, Universal Outdoor, Inc. and Eller Media.

Robert E. Cooper, Jr., State Attorney General & Reporter; Michael E. Moore, Solicitor General; Larry M. Teague, Deputy Attorney General, for the appellee, Tennessee Department of Transportation.

OPINION

I. BACKGROUND

This case involves a two-sided billboard which long stood along State Route 86 in Collierville, Shelby County, Tennessee. In the 1950s, a predecessor-in-interest to the petitioner in

this case[1] installed the billboard on a piece of property that was zoned FAR (Forest, Agricultural and Residential).  At that time, advertising billboards were a permitted use in such zones.  That changed with the passage of the Tennessee Billboard Regulation and Control Act of 1972, Tenn. Code Ann. § 54-21-101 *et seq*. ("Tennessee Act"), which was enacted in response to the Federal Highway Beautification Act of 1965 (23 U.S.C. §§ 131, 136 and 319).

The federal statute, 23 U.S.C. § 131, requires states to enact measures to control outdoor advertising signs, and conditions the receipt of federal funds for highway improvement on compliance with its standards.  As stated in the federal law, its purpose is to ". . . protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty."  23 U.S.C. § 131(a).  The federal act contains a strict timetable for removal of prohibited billboards located adjacent to the interstate highway system.

The Tennessee Billboard Regulation and Control Act prohibits the erection or maintenance of outdoor advertising signs or devices within 660 feet of any interstate or primary highway systems in the state.  Several exceptions to the prohibition are set out in the Tennessee Act, such as signs advertising activities conducted on the property on which they are located, and signs located in areas zoned for commercial or industrial use.  None of the listed exceptions applies to the billboard at issue in this case.

The Tennessee Act requires owners of billboards to apply to the Department of Transportation ("TDOT") for permits, which, if granted, are subject to yearly renewal.  Tenn. Code Ann. § 54-21-104.  It also authorizes the Commissioner of Transportation to acquire and remove billboards lawfully in existence under prior law, by purchase, gift or condemnation, and to pay just compensation upon removal.  Tenn. Code Ann. § 54-21-108.

TDOT granted two permits for the billboard at issue, one for each of its two faces.  Since the billboard had been in place prior to the enactment of the Billboard Regulation and Control Act, it was allowed to remain as a pre-existing, non-conforming use.  Under the rules promulgated by the Department of Transportation under authority of the Tennessee Act, a non-conforming device "means one which is lawfully erected but which does not comply with the provisions of state law or state regulations due to changed conditions."  Tenn. Comp. R. & Regs #1680-2-3-.02(1)(15).

The permit numbers for the two faces of the billboard were 79-0611 and 79-0612.  For reasons that are not clear from the record, the Department did not send renewal notices to the billboard's owners, and the  permits were not subsequently renewed.  In 1977, permit numbers 79-0611 and 79-0612 were deleted from the Department's list of billboards to be permitted, again for reasons that are not clear from the record.

---

[1]It is unclear from the record what company or entity was the original owner of the billboard.  The record shows that Tanner-Peck Outdoor Advertising Company was the owner at the time the Department requested relocation. Universal Outdoor Inc., which merged with, Eller Media Company in 1998, succeeded to the rights of Tanner-Peck.  The combined company was ultimately acquired by Clear Channel Outdoor, Inc., which has become the real party in interest. To avoid confusion, we will refer to the plaintiff in this case as "Universal" or "Universal Outdoor."

In 1996, the Department notified Universal Outdoor's predecessor-in-interest that the State would be widening State Route 86 and would have to take the land the billboard was located upon for its right of way. The State did not offer to acquire the sign, but a "Notice of Relocation Eligibility" informed Universal that it would have to remove the billboard and that State funds were available for the expense of voluntary relocation.

Universal moved the billboard to another location on its leasehold, twenty-five to thirty feet from its previous location, and submitted an invoice to the State for its costs in the amount of $3,403, which was duly paid. Universal then applied for a renewal of its permit. An agent for the sign company, Diane Atherton, subsequently contacted Mr. Bob Shelby of TDOT's Highway Beautification Office about the renewal of the permit for the structure with permit numbers 79-0611 and 79-0612. Mr. Shelby was unaware that the billboard had been moved, and Ms. Atherton did not mention it to him.

Mr. Shelby told Ms. Atherton that the permits could be renewed upon payment of back fees for the past 21 years, which he calculated to be $505 per face, and renewal fees of $30 per face. Universal sent TDOT a check for $1070 and submitted applications for renewal of the two permits. In the place on the applications for sign erection date, Universal had filled in "5-4-57." There were no indications on the applications that the signs had been removed from their original location.

Before processing the application, Mr. Shelby telephoned Mr. Gary Barta of the City of Collierville to verify the zoning of the site. Mr. Barta verified that the billboard was located in an area zoned for forest, agricultural and residential use only. He also told Mr. Shelby that the structure had been moved from its original location. Mr. Shelby performed a field inspection and observed that the billboard was located twenty-five to thirty feet away from where an old set of sign support poles had been sawn off. Mr. Shelby contacted the TDOT right-of-way office, and learned that the sign had been relocated in conjunction with the widening of State Route 86.

In a letter dated March 5, 1998, TDOT notified Universal of its preliminary finding that Universal's sign was illegally erected in an area that does not qualify for a state permit. The Department declared that removal of the sign was required to abate the unlawfulness, and that if Universal failed to remove it, the State would do so and charge Universal three times the cost of removal. *See* Tenn. Code Ann. § 54-21-105.

On March 31, 1998, TDOT sent Universal a letter officially denying Universal's permit applications. The letter stated that the billboard was a nonconforming structure because it was located in an area not zoned for such uses, and that "the relocation of the structure . . . constitutes the construction of a new device at a new location." The letter also advised Universal Outdoor that the money it submitted for back fees would be refunded and that it had the right under the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-101 *et seq*., to request a hearing within thirty days to show why the permit applications should not have been denied.

## II. ADMINISTRATIVE AND TRIAL COURT PROCEEDINGS

Universal availed itself of its rights and requested an administrative hearing to challenge the Department's refusal to grant it a permit. After several continuances, a hearing on the matter was conducted on March 27, 2000. Two witnesses testified, Bob Shelby of the Department of Transportation and Larry Quas, the real estate manager for Universal Outdoor and Eller Media. Their testimony was mainly elicited for the purpose of admitting documents into the record that were necessary for an understanding of the case.

At the conclusion of testimony, the Administrative Law Judge took the case under advisement. On September 5, 2001, the ALJ filed an initial order containing detailed Findings of Fact and Conclusions of Law. The order upheld TDOT's denial of the permits and declared that the billboard had been erected in violation of the applicable law and regulations and as such had to be removed. On January 28, 2004, the Commissioner of Transportation issued a final order which adopted the ALJ's findings of fact and conclusions of law and ordered Universal to remove its billboard. Universal then filed a motion for stay of the Final Order pending judicial review under Tenn. Code Ann. § 4-5-322. The motion was granted.[2]

Universal filed a petition for judicial review to the Chancery Court of Davidson County. *See* Tenn. Code Ann. § 4-5-322(b). The administrative record was submitted to the court, as were the parties' briefs. After examination of the documents and a court hearing, the Chancery Court affirmed the Final Order of the Department of Transportation on March 17, 2006. In an accompanying memorandum opinion, the court adopted the ALJ's Findings of Fact *in toto* and discussed the legal issues arising from those facts. Universal filed a Motion to Alter or Amend the Final Order, which was denied. This appeal followed.

## III. ANALYSIS

### A. THE STANDARD OF REVIEW

The standard of review before this court is the same as that in the trial court. *Terminix Int'l Co., L.P. v. Tenn. Dept. of Labor*, 77 S.W.3d 185, 191 (Tenn. Ct. App. 2001). Both courts review factual issues upon a standard of substantial and material evidence. *Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977); *Gluck v. Civil Service Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999).

Judicial review of an agency decision after a contested case hearing is governed by Tenn. Code Ann. § 4-5-322, the section on judicial review of administrative decisions under the Administrative Procedures Act. Accordingly, judicial review is confined to the Department's

---

[2]Universal complains in its brief that because of TDOT's actions it has been deprived of a valuable commercial property. We can find nothing in the record to indicate that the stay has ever been lifted, so it is unclear whether any such deprivation has yet taken place.

record. Tenn. Code Ann. § 4-5-322(g); *McClellan v. Board of Regents of State University*, 921 S.W.2d 684, 690 (Tenn. 1996). A court may reverse or modify the administrative decision if the rights of the petitioner have been prejudiced because the decision was made in violation of constitutional or statutory provisions, in excess of the statutory authority of the agency, or upon unlawful procedure, if the decision was arbitrary or capricious or characterized by abuse of discretion, or if the decision is unsupported by substantial and material evidence in the record. Tenn. Code Ann. § 4-5-322(h); *Humana v. Tennessee Health Facilities Commission*, 551 S.W.2d 664, 667 (Tenn. 1977). The standard of review for administrative proceedings before this court is the same as it is before the trial court. *Robertson v. Tenn. Bd. of Social Worker Certification and Licensure*, 227 S.W.3d 7, 13 (Tenn. 2007); *Metro. Gov't of Nashville & Davidson County v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977).

An allegation under Tenn. Code Ann. § 4-5-322(h)(l) that an agency decision was made in violation of a constitutional or statutory provision raises questions of law. Questions of law, as in other cases, are reviewed *de novo* with no presumption of correctness. *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 17 (Tenn. 2007). Where resolution of an issue presented in a judicial review of an administrative decision under the UAPA hinges upon the interpretation and application of a statute or constitutional provision, courts will review the question *de novo. King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002); *Bellsouth Telecommunications, Inc. v. Greer*, 972 S.W.2d 663, 672 (Tenn. Ct. App. 1997) (stating that "the search for the meaning of statutory language is a judicial function"); *Wellmont Health System v. Tennessee Health Facilities Commission,* No. M2002-03074-COA-R3-CV, 2004 WL 193074, at *4 (Tenn. Ct. App. Jan. 29, 2004).

## B. The Tennessee Billboard Regulation and Control Act of 1972

It is beyond dispute that TDOT's decision to deny the permits requested by Universal and to order the removal of its billboard is consistent with the Tennessee Billboard Regulation and Control Act and the regulations promulgated under that Tennessee Act. Tenn. Code Ann. § 54-21-104(a) declares that,

> Unless otherwise provided in this chapter, no person shall construct, erect, operate, use, maintain, or cause or permit to be constructed, erected, operated, used, or maintained, any outdoor advertising within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems without first obtaining from the commissioner a permit and tag.

Tenn. Code Ann. § 54-21-104(c) requires that such permits be renewed annually. Tenn. Code Ann. § 54-21-105 provides that any person who has failed to act in accordance with the provisions of Tenn. Code Ann. § 54-21-104 "shall remove the same [billboard] immediately. Such failure shall render the outdoor advertising a public nuisance and subject to immediate disposal, removal or destruction." Failure to remove such a billboard is also a Class C misdemeanor, Tenn. Code Ann. § 54-21-105(a)(3), and under those circumstances the Commissioner may enter upon the

property where the outdoor advertising is located, and "dispose of, remove, or destroy the same, all without incurring any liability for such actions." Tenn. Code Ann. § 54-21-105(a)(4).

Tenn. Code Ann. § 54-21-112 confers full authority upon the Commissioner of Transportation to "promulgate and enforce any and all regulations as required and necessary to fully carry out" the provisions of the Billboard Regulation and Control Act and 23 U.S.C. § 131. The regulations promulgated by the Tennessee Department of Transportation are found at Tenn. Comp. R. & Regs. #1680-2-3. Among other things, they provide protection for signs that were lawful at the time they were first erected, but which do not comply with provisions of state law or state regulations enacted at a later date (designated as non-conforming devices or grandfathered non-conforming devices). However, that protection is not absolute. Tenn. Comp. R. & Regs. #1680-2-3-.04(1) reads,

> Grandfathered non-conforming devices as defined in § 1680-2-3-.02, paragraph 11, and nonconforming devices as defined in § 1680-2-3-.02, paragraph 15, may remain in place, subject to restrictions set forth herein, until such time as they may be purchased.
> (a) Restrictions on non-conforming and grandfathered non-conforming devices are as follows:
> 1. Maintenance beyond customary maintenance will not be allowed. Customary maintenance is defined as the replacement of the sign face or stringers, but not the replacement of any pole, post, or support structure.
> 2. Under no circumstances may the location be changed.
> 3. Extension or changing height above ground level or enlargement of the sign face will not be allowed.
> 4. Lighting cannot be added to an unilluminated sign.
> 5. Reflective material cannot be added to an unreflectorized sign.

Tenn. Comp. Rules & Regs. 1680-2-3-.03(1)(a)6(iii) further declares that: "Each permit and tag is issued for a specific structure and site. The tag is not transferable to another location. **(Under no circumstances may a permit and tag be transferred to another location.)**" (emphasis added). Further, Tenn. Comp. R. & Regs. 1680-2-3-.03(1)(a)5(vi) states that "[o]utdoor advertising constructed prior to obtaining a permit and tag is subject to removal at the expense of the owner."

The above restrictions and rules prevent changes to non-conforming billboards and promote the eventual elimination of all non-conforming devices from areas adjacent to the highway. *See Rives v. City of Clarksville*, 618 S.W.2d 502 (Tenn. Ct. App. 1981)(eventual termination of non-conforming uses is a legitimate goal which may be achieved by rules and ordinances so long as they strike a reasonable balance between public benefit and private injury); *see also Whiteco Metrocom Corp. v. Com., Transp. Cabinet, Dept. of Highways*, 14 S.W.3d 24, 28 (Ky. App. 1999) (the intent of 23 U.S.C. § 131 and of state laws enacted consistent with it is to gradually phase out non-conforming billboards as their natural life is exhausted).

Applying these rules to the present case, it appears that TDOT recognized Universal's right to maintain its non-conforming device by granting it two permits after the enactment of the Billboard Control and Regulation Act of 1972.  Universal was able to keep its non-conforming billboard in place until at least 1996, when the Department acquired the property under it for a highway right of way.  At that point, the Department offered to reimburse Universal for the cost of relocating the billboard.  Instead of relocating the billboard to an area where it would be legally permitted, Universal chose to rebuild it thirty feet from its former location.  Universal violated the prohibitions in the rules against changing the location of the sign and replacing poles, posts or support structures.  The relocation disqualified the sign from the grandfather provision in the rules.

Thus, the new sign was prohibited by statute and did not qualify under the rule for pre-existing signs.  Therefore, as the trial court found, Universal was not entitled to a permit for the relocated sign, and the Commissioner properly denied its permit application.

### C. TENN. CODE ANN. § 13-7-208

Universal's primary argument on appeal hinges on the grandfathering provisions of the section of the Tennessee Code that governs municipal zoning.  Tenn. Code Ann. § 13-7-208 grants broader protections to pre-existing businesses, industrial and commercial establishments affected by zoning changes than does the Billboard Regulation and Control Act.  Under the zoning statute, such a business or establishment may continue in operation, Tenn. Code Ann. § 13-7-208(b), may expand operations, Tenn. Code Ann. § 13-7-208(c), and may even "destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change." Tenn. Code Ann. § 13-7-208(d).

In *Rives v. City of Clarksville*, a case involving an auto salvage yard, this court set out the requirements that a party must establish in order to receive the benefits of Tenn. Code Ann. § 13-7-208:  (1) that there is zoning where there previously was none, or there is a change in zoning restrictions, and (2) there was permissive operation of the business prior to the zoning change. *Rives v. City of Clarksville*, 618 S.W.2d at 505.  A person seeking the protection of Tenn. Code Ann. § 13-7-208 ". . . has the burden of proving that its sign is a pre-existing non-conforming use that qualifies for protection." *Outdoor West of Tennessee v. Johnson City,* 39 S.W.3d 131, 135 (Tenn. Ct. App. 2000); *Coe v. City of Sevierville*, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000); *Lamar Advertising of Tennessee, Inc. v. City of Knoxville,* 905 S.W.2d 175, 176 (Tenn. Ct. App. 1995)  We have also held that "[a] grandfather clause exception in a statute must be construed strictly against the party who seeks to come within the exception." *Outdoor West of Tennessee*, 39 S.W.3d at 135 (citing *Teague v. Campbell County,* 920 S.W.2d 219, 221 (Tenn. Ct. App. 1995)).

Universal cites several cases which it suggests demonstrate in the aggregate that it is entitled to the benefits of Tenn. Code Ann. § 13-7-208.  However, all those cases can be distinguished on their facts from the present case, in that they did not involve enforcement of the Billboard Regulation and Control Act by the Tennessee Department of Transportation, but only the proper application of municipal zoning ordinances.  For example, the plaintiff in *Outdoor West of Tennessee*, had already

obtained state permits for the existing billboards at issue. The billboard company sought municipal permits to enlarge and upgrade them. The city refused because of a new zoning ordinance that prohibited the construction of new billboards in the city. The trial court ordered the city to issue the permits. We affirmed the trial court, ruling that billboards are "business establishments" under the statute, and thus that the grandfathering provisions of Tenn. Code Ann. § 13-7-208 apply to them to the same degree as to other businesses. *Outdoor West of Tennessee*, 39 S.W.3d at 137.

In *Creative Displays, Inc. v. City of Pigeon Forge,* 576 S.W.2d 356 (Tenn. Ct. App. 1978), we were confronted with the question whether non-conforming outdoor billboards on leased land are entitled to the same grandfathering protections as are such billboards when the owner of the sign is also the owner of the land. We held that the grandfathering statute (then designated as Tenn. Code Ann. § 13-708) could not be construed to draw a distinction between the rights of a leaseholder and those of a landowner to maintain a non-conforming use. Of course, TDOT's refusal to issue the requested permits in the present case was not based on the type of interest that Universal possessed over the land on which its billboard was located.

Finally, Universal cites *Lamar Advertising v. City of Knoxville*, No. 03A01-9407-CH-00252, 1995 WL 124292 (Tenn. Ct. App. March 23, 1995) (perm. app. denied Aug. 28, 2005), which involved billboards in three different Knoxville locations. Lamar Advertising applied for a permit to remove and rebuild the billboard at one of those locations, and the city denied the application because the property was in a zone prohibiting billboards. The trial court ordered the city to issue the permit, holding that Tenn. Code Ann. § 13-7-208(d) entitled the owner to rebuild the non-conforming billboard anywhere on its property.

We affirmed, holding that Tenn. Code Ann. § 13-7-208(b)-(d) does not prevent a billboard owner from moving a non-conforming sign from one portion of its property to another. We noted that the plain terms of the statute prohibit a non-conforming business from expanding through the acquisition of additional land, but that they do not prohibit it from moving a structure necessary for the continuation of its non-conforming use from one portion of its property to another. *Lamar Advertising v. City of Knoxville*, 1995 WL 124292, at *3. There is no indication in the opinion that the billboard whose relocation was allowed was in an area subject to regulation under the Billboard Control and Regulation Act.

What all those cases have in common is that they involve an application to city authorities for a permit to allow a use that became non-conforming due to a change in a municipal zoning ordinance. As the *Outdoor West* opinion indicates, a billboard may be subject to the permitting requirements of the municipality where it is located, and, if it is within 660 feet of an interstate or a primary highway, also subject to statutory requirements administered by the Tennessee Department of Transportation as well. Enforcement of municipal zoning ordinances is subject to the grandfathering provisions of Tenn. Code Ann. § 13-7-208. Enforcement of the Tennessee Billboard Control and Regulation Act is subject to the grandfathering provisions of Tenn. Comp. R. & Regs. #1680-2-3.

The proposed billboard location in the present case is illegal and non-conforming because it is within 660 feet of a primary highway and because the Billboard Control and Regulation Act prohibits billboards in an FAR zone located near the highway. The zoning of the property, both where the sign was originally located and where it was proposed to be relocated, did not change. Neither the Department of Transportation nor the State enacts zoning. Further, the event that caused the removal of Universal's billboard from its original location, *i.e.*, the State's acquisition of property to expand a highway right-of-way, had nothing to do with zoning. Therefore, Universal was not entitled to the protection or benefits of Tenn. Code Ann. § 13-7-208. More importantly, the billboard at issue was governed by the Tennessee Billboard Regulation and Control Act. Thus, any relief must arise from that Tennessee Act or the rules promulgated pursuant to it.

## D. INVERSE CONDEMNATION

Universal argues on appeal that the State's action in forcing it to remove its billboard, and subsequently refusing to grant it a permit for the relocated billboard, amounted to a "taking" of its property without just compensation, in violation of constitutional provisions. Universal raised the takings issue in the trial court,[3] alleging that the Commissioner:

> erred in failing to find that the actions of TDOT and therefore the State of Tennessee constitute a taking without just compensation and in failing to require TDOT and/or the State to rely upon its power of eminent domain as generally set out in TCA 54-21-102, et. seq. in order to acquire the subject structures and/or effectuate their removal.

The trial court did not directly address the takings claim, but found that Universal's predecessor in interest "was paid for expenses incurred in relocation of the sign" and that "[h]aving compensated [the predecessor] for the cost of relocation of the sign, the Department had no further duty to Petitioner other than to process its application pursuant to applicable regulations and procedure."

The second clause of the Fifth Amendment to the United States Constitution provision, called the Takings Clause or sometimes the Just Compensation Clause, provides "nor shall private property

---

[3]From our review of the record, Universal apparently did not raise the takings issue before the administrative agency. The rule requiring that errors cannot be raised for the first time on appeal has been applied to a failure to raise issues in an administrative tribunal, at least as to procedural and evidentiary matters, since an administrative tribunal should also be given the opportunity to correct procedural errors. *Robertson v. Tenn. Bd. Of Social Worker Certification and Licensure*, 227 S.W.3d at 15. Since inverse condemnation is a cause of action subject to direct action in court, it is not clear that Universal's failure to assert that claim at the administrative level can act as a bar to its assertion in court. In any event, we will examine the claim.

be taken for public use, without just compensation."[4]  It is predicated on the proposition that the government should pay for private property it has taken for its own use.  Similarly, the Tennessee Constitution in Article I, § 8 provides that "no man shall be . . . deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land."  Article I, § 21 provides that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives or without just compensation being made therefor."  These provisions apply to governmental taking of property.  *Barge v. Sadler*, 70 S.W.3d 683, 687 at n.4 (Tenn. 2002); *Far Tower Sites, LLC v. Knox County*, 126 S.W.3d 52, 69 (Tenn. Ct. App. 2003); *Cross v. McCurry*, 859 S.W.2d 349, 353 (Tenn. Ct. App. 1993).

A taking of property for public use violates the Takings Clause only if just compensation is not paid.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536-37, 125 S.Ct. 2074, 2080 (May 23, 2005).  "The Fifth Amendment does not proscribe the taking of property, it proscribes taking without compensation."  *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S. Ct. 3108, 3120 (1985).  In the case before us, Universal's assertion was that TDOT should have used its power of eminent domain, not that the State could not use that power.  In other words, the availability of condemnation by the State was not challenged.[5]

The Tennessee legislature has implemented the State constitutional provision through adoption of eminent domain and inverse condemnation statutes.  *Edwards v. Hallsdale-Powell Utility District*, 115 S.W.3d 461, 464 (Tenn. 2003); *Jackson v. Metropolitan Knoxville Airport Auth.*, 922 S.W.2d 860, 861 (Tenn. 1996).  Both statutory procedures are methods by which a landowner can enforce the right to just compensation.  Inverse condemnation "is a shorthand description of the manner in which a landowner recovers just compensation for a taking of property when condemnation proceedings have not been instituted."  *Jackson*, 922 S.W.2d at 861-62.

A party that is aggrieved by an alleged taking is entitled to ask for relief by filing a timely action for inverse condemnation in our courts.  *See* Tenn. Code Ann. § 29-16-123; *Edwards v. Hallsdale-Powell Utility Dist.*, 115 S.W.3d 461, 464 (Tenn. 2003); *Jackson*, 922 S.W.2d at 861;

---

[4]The Takings Clause applies to the states through the Fourteenth Amendment.  *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 232 n.6, 123 S. Ct. 1406, 1417 n. 6 (2003); *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S.Ct. 2448, 2457 (2001); *Chicago, B.&Q. R. Co. v. Chicago*, 166 U.S. 226, 239, 17 S. Ct. 581, 586 (1897).

[5]Few bases for challenging a government's right to take property exist. A governmental taking of private property from one citizen for the private use of another is also unconstitutional, regardless of whether compensation is paid.  *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241, 104 S. Ct. 2321, 2329 (1984).  The test is whether the taking serves a public purpose.  *Kelo v. New London*, 545 U.S. 469, 125 S.Ct. 2655 (2005).  The same is true under the Tennessee Constitution, i.e., a governmental taking for private purposes is unconstitutional.  *Barge*, 70 S.W.3d at 687 at n.4; *Cross*, 859 S.W.2d at 353.  The Takings Clauses of both constitutions affirm the government's authority to confiscate private property, but imposes two conditions: the taking must be for a public purpose, and just compensation must be paid.  *Legal Foundation of Washington*, 538 U.S. at 231-32, 123 S.Ct. at 1417.  Universal does not contend that the State could not lawfully take the real property for purposes of highway widening, not does it argue that the State did not have the authority to take its personal property, the billboard.

-10-

*Consolidated Waste Systems, L.L.C. v. Metro. Gov't of Nashville & Davidson County*, No. M2002-02582-COA-R3-CV, 2005 WL 1541860, * 11-13 (Tenn. Ct. App. June 30, 2005) (no Tenn. R. App. P. 11 application filed).

An action for compensation (in this case it would be additional compensation) would be brought as an inverse condemnation suit. Universal could not bring a claim for compensation in this action for judicial review of an administrative decision to deny a permit. A direct or original action cannot be brought in conjunction with an action that is appellate in nature, such as judicial review under the APA or common law writ of certiorari. *See Winkler v. Tipton County Bd. of Educ.*, 63 S.W.3d 376, 383 (Tenn. Ct. App. 2001); *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386-87 (Tenn. Ct. App. 1983) (condemning the "joinder of an appeal with an original action and the simultaneous consideration of both at the trial level").

Additionally, if Universal had attempted to obtain the remedy of increased compensation, such a claim would have been time barred by the time the petition for judicial review was filed. If there were a taking in this case, it occurred either in 1996 when TDOT ordered Universal to remove its sign, or, even under Universal's argument, in 1998 when TDOT refused to issue a permit for Universal's relocated sign. Tenn. Code Ann. § 29-16-124 sets out a twelve month statute of limitations for the filing of an inverse condemnation action.

Universal was eligible for compensation under the Billboard Control and Regulation Act when it was told to remove its sign, and Universal accepted TDOT's monetary offer for relocation of the sign. We also note that the State did not take the sign itself, and compensated Universal (or its predecessor) for costs of relocation. Universal, therefore, kept its property and could use it again in a location where billboards are legal.

In view of the above discussion, and using the standards for judicial review under the APA, we interpret Universal's argument, not as a claim for additional compensation, but as an argument that TDOT's actions in combination (requiring removal of the existing billboard and then denying a permit at the new location) violate a statutory or constitutional provision. However, we find no violation in TDOT's action denying the permit at the new location. That decision was in accord with federal and state statutes. The action on appeal herein was one for judicial review under the APA. The decision being reviewed was the Commissioner's denial of a permit for a sign at the new location. We find no basis in Universal's takings argument for reversing that decision.

**IV.**

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants, Universal Outdoor, Inc. and Eller Media Company or their successor.[6]

_____
PATRICIA J. COTTRELL, JUDGE

---

[6]The appeal bond for costs lists as principal and appellant "Universal Outdoor, Inc. c/o Clear Channel Outdoor, Inc."