# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
## February 5, 2008 Session

## LAMAR TENNESSEE, LLC, ET AL. v. METROPOLITAN BOARD OF ZONING APPEALS, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 05-2868-II    Carol L. McCoy, Chancellor

### No. M2007-00883-COA-R3-CV - Filed March 5, 2010

The Metropolitan Government of Nashville and Davidson County adopted a redevelopment plan for an area of the city which included the site of a long-existing billboard. The Tennessee Department of Transportation subsequently ordered the removal of the billboard to accommodate a road-widening project. The sign's owner filed an application for a permit to relocate the sign on another portion of its leasehold, but the city declined to approve the application because the redevelopment plan totally prohibits signs of that type. The sign company filed a petition for certiorari in the Chancery Court of Davidson County, asserting that Tenn. Code Ann. § 13-7-208 of the zoning statutes gave it the right to replace the sign. The court agreed, and ordered the city to re-evaluate the permit application in accordance with the statutory provisions for a pre-existing non-conforming use after a change of zoning. We reverse, finding that the grandfather provisions of Tenn. Code Ann. § 13-7-208 have no applicability to the restrictions contained in redevelopment plans under Tenn. Code Ann. § 13-20-201 *et seq*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Robert M. Holland, Jr., Donald P. Paul, James A. Beakes, III, Nashville, Tennessee, for the appellant, Metropolitan Development and Housing Agency.

Sue B. Cain, Deputy Director of Law, Department of Law of the Metropolitan Government of Nashville and Davidson County; Lora Barkenbus Fox, J. Brooks Fox, Paul J. Campbell,

II, Assistant Metropolitan Attorneys for the appellant, Metropolitan Board of Zoning Appeals and Metropolitan Government.

Lawrence P. Leibowitz, C. Ryan Stinnett, Knoxville, Tennessee, for the appellees, Lamar Tennessee, LLC d/b/a Lamar Advertising of Nashville and Frank C. May.

## OPINION

The facts of this case are not in dispute, and its resolution depends entirely on a question of law: whether regulations enacted as part of a plan for a redevelopment district are "zoning" restrictions or regulations such that under the grandfather provisions of Tenn. Code Ann. § 13-7-208 the owner of a pre-existing non-conforming use in the redevelopment district is entitled to the benefits of the grandfather statute.

## I. FACTS

Since 1957, Lamar Tennessee, L.L.C. ("Lamar") has owned a billboard on leased property south of downtown Nashville near the Cumberland River. The billboard was legally erected, properly permitted, and in conformity with the zoning ordinance in place at the time it was first built. In 1980, the Metropolitan Development and Housing Authority ("MDHA") drafted a plan to establish the Rutledge Hill Redevelopment District to facilitate the improvement of a largely commercial area close to downtown that was deemed to be blighted. *See* Tenn. Code Ann. § 13-20-201 *et seq.* Lamar's leasehold lies totally within the boundaries of that district. The Metropolitan Government of Nashville and Davidson County ("Metro") adopted the proposed redevelopment plan on April 1, 1980. Amendments to the plan were enacted in 1986, 1987, 1991, 1997 and 2006.

Around 2003, construction began on the Gateway Bridge across the Cumberland River. Because of necessary road widening on Gateway Boulevard at the entrance to the bridge, the Tennessee Department of Transportation ordered Lamar to relocate its billboard.

On May 30, 2003, Lamar submitted an application for a building permit to the office of the Metro Codes Administration so it could re-erect its billboard on another portion of its leasehold. Metro referred the matter to MDHA, which is charged with determining whether an application for a building permit in the redevelopment district is compatible with the redevelopment plan. Metro took the position that it could not issue a building permit unless all the regulatory approvals had been obtained.

The redevelopment plan prohibited billboards or other off-premises signs of the type Lamar operated. However, the billboard predated the creation of the development district, and neither Metro nor MDHA had taken any action to have it removed.

According to the affidavit of Joe Cain, MDHA's Assistant Director for Real Estate and Urban Development, once MDHA has made its findings, the Codes Administration may then determine whether the requested permit should be issued. MDHA deferred action on Lamar's application for over a year, stating the delay was needed because its attorney had to review the applicable law before making a decision, and Metro took no action on the permit.

Unhappy with the delay, in 2004, Lamar filed suit against Metro Government and MDHA in the Chancery Court of Davidson County. Lamar asked the court to grant a writ of mandamus to compel issuance of the building permit. The defendants filed a motion to dismiss the suit, citing Lamar's failure to exhaust its administrative remedies. The court granted the motion to dismiss without prejudice and ordered Lamar to file an appeal to the Metropolitan Board of Zoning Appeals ("the BZA").

The hearing on Lamar's appeal to the BZA was conducted on September 15, 2005. Prior to the hearing, the Board received a memorandum from the Metropolitan Planning Department recommending that the billboard permit be denied, citing the requirements of the Rutledge Hill Development District as well as the goals of the Subarea 9 Center City Plan, which contemplated the development of Gateway Boulevard as "a pedestrian friendly urban street." Additionally, numerous property owners and residents of condominiums in the developing neighborhood close to the billboard site wrote to the BZA in opposition to the permit.

At the BZA hearing, Lamar's attorney argued that Tenn. Code Ann. § 13-7-208 of the zoning statutes gave the sign company the right to rebuild the sign. Under that statute, owners of pre-existing non-conforming business establishments may continue to operate despite any zoning change, and may even "destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business . . ." Tenn. Code Ann. § 13-7-208(d). Off-site signs are specifically included among the businesses entitled to destroy and reconstruct their facilities. Tenn. Code Ann. § 13-7-208(h).

MDHA's representative argued that while the requirements of the redevelopment plan are land use regulations, they are not the same as zoning, and thus that there was no zoning change that would have triggered the grandfathering provisions of Tenn. Code Ann. § 13-7-208. Lamar's attorney responded that this was a distinction without a difference, noting that "you can call an orange an apple, but it's still going to taste the same." The BZA also heard from several residents of the neighborhood who testified in opposition to the billboard, as did

Metro Councilman Mike Jameson. At the conclusion of testimony, the BZA unanimously affirmed the zoning administrator's decision not to issue the permit, "since MDHA denied your request for a billboard."[1] Lamar then filed a petition for writ of certiorari to the Chancery Court.

The Chancery Court conducted another hearing, and then announced its decision in an eighteen page Memorandum and Order filed on March 23, 2007. The court discussed the history of land use planning in Tennessee, including the legislative grant to Metro (and other municipalities) of the authority to regulate land use through both the zoning statutes and through the creation of housing authorities that can improve blighted areas by establishing redevelopment districts. The court also acknowledged the limited parameters of a trial court's authority to review the action of an inferior tribunal under a petition for writ of certiorari. Such a review is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily or fraudulently.

The court concluded that the grandfather provisions of Tenn. Code Ann. § 13-7-208 were applicable to Lamar's permit application and thus the land use regulations promulgated by ordinance as part of a local redevelopment plan could not trump the requirements of the zoning statutes enacted by the legislature. Since the Zoning administrator and the BZA had the authority to act on Lamar's permit application, the court concluded that their failure to act was arbitrary, "particularly in light of the Rutledge Hill Development Plan's own language."[2] The court accordingly ordered the city to re-evaluate Lamar's permit application in accordance with the provisions for pre-existing non-conforming under the zoning statute. This appeal followed.

---

[1] Lamar points out that there was really nothing for the BZA to affirm, since there had been no decision one way or another on its application, by either MDHA or Metro Codes Administration. Lamar argues that by characterizing the defendants' failure to act as a denial of the permit, and then affirming the denial, the BZA acted arbitrarily, capriciously and/or illegally. The trial court's order noted that at the hearing before the BZA, the MDHA stated that it had denied the permit.

[2] There is no dispute that the trial court erred when it found the Redevelopment Plan itself allowed pre-existing uses. The trial court was referring to language in the 1980 version of the redevelopment plan that reads, "[e]xisting uses in the area will be treated with the non-conforming, non-complying provisions of the Metro Zoning Ordinance." Metro points out, however, that the cited language was removed from the redevelopment plan by Ordinance No. 086-1131, which was enacted by the Metro Council on April 1, 1986. On appeal, Lamar does not dispute this point.

## II. STANDARD OF REVIEW APPLICABLE TO ACTIONS OF THE BZA

The proper vehicle by which to seek judicial review of decisions of the local board of zoning appeals is the common law writ of certiorari, because such an action is administrative or quasi-judicial in nature, since it involves application of an existing zoning code to a particular set of facts. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639-40 (Tenn. 1990); *Moore & Associates, Inc. v. West*, 246 S.W.3d 569, 576 (Tenn. Ct. App. 2005); *City of Brentwood v. Metropolitan Bd. of Zoning Appeals*, 149 S.W.3d 49, 57 (Tenn. Ct. App. 2004);*Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 783-84 (Tenn. Ct. App. 2003); *Wilson County Youth Emergency Shelter, Inc. v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999). Boards of zoning appeals generally engage in enforcing, applying, or executing law already in existence. *Weaver*, 122 S.W.3d at 784; *Wilson County Youth Emergency Shelter,* 13 S.W.3d at 342.

The scope of review under the writ of certiorari is quite limited. *Harding Academy v. Metropolitan Gov't of Nashville and Davidson County*, 222 S.W.3d 359, 363 (Tenn. 2007); *Willis v. Tennessee Dep't of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003). In common law writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *Willis*, 113 S.W.3d at 712; *Petition of Gant*, 937 S.W.2d 842, 844-45 (Tenn. 1996) (quoting *McCallen v. City of Memphis*, 786 S.W.2d at 638).

Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (2) reweigh the evidence, *Hoover, Inc. v. Metro Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't of Nashville*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000).

Further, illegal, arbitrary or fraudulent actions include: (1) the failure to follow the minimum standards of due process; (2) the misrepresentation or misapplication of legal standards; (3) basing a decision on ulterior motives; and (4) violating applicable constitutional standards. *Harding Academy*, 222 S.W.3d at 363 (citing *Hoover, Inc. v. Metro Bd. of Zoning Appeals*, 924 S.W.2d at 904). The same limitations apply to the scope of review of the appellate courts, which "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the Board." *Watts v. Civil Service Board for Columbia*, 606 S.W.2d at 277

The facts of this case are not in dispute, and the only question before this court is whether Lamar is entitled to reconstruct its billboard as a pre-existing non-conforming use under the grandfathering provisions of Tenn. Code Ann. § 13-7-208, or whether it is forbidden to do so because of the prohibition against billboards in the Rutledge Hill Redevelopment Plan. This issue of statutory interpretation is a question of law, and on appeal this court reviews questions of law *de novo*, according no presumption of correctness to the trial court's conclusions. *Colonial Pipeline Co. v. Morgan* 263 S.W.3d 827, 836 (Tenn. 2008); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

### III. ANALYSIS

### A. The Rutledge Hill Redevelopment Plan

As the trial court noted, local governments lack the inherent authority to control the use of private property within their boundaries because all such authority is derived from the State of Tennessee. *Smith County Regional Planning Commission v. Hiwassee Village Mobile Home Park*, 2010 WL 252285, at *6 (Tenn. Ct. App. Jan. 22, 2010); *Lafferty v. City of Winchester,* 46 S.W.3d 752, 757 (Tenn. Ct. App. 2000). The General Assembly granted zoning powers to local governments starting in 1935, so they could control the use of land within their boundaries. *See* Tenn. Code Ann. § 13-7-101 et seq. The General Assembly also authorized municipalities to create housing authorities, with broad powers, including the power of eminent domain in appropriate cases. Tenn. Code Ann. § 13-20-104(17).

The Rutledge Hill Redevelopment Plan, enacted pursuant to Tenn. Code Ann. § 13-20-201 *et seq*., sets out the following limitations on signs within the development district:

> Signs are limited to those which apply only to the use or business conducted on the same site and to incidental signs for the convenience and direction of the public or of a clearly general nature such as, to portray time, temperature, or announcements of activities taking place at the location. Signs will be subject to review and approval of MDHA, and will be permitted only when designed and placed in harmony with the improvements upon the building site and surrounding development. Billboards, roof signs and flashing, moving or seeming to move or intermittently illuminated signs shall not be permitted.

### B. The Grandfather Statute And Applicable Rules Of Construction

Tenn. Code Ann. § 13-7-208(b)-(d) sets out the basis for Lamar's argument that it is entitled to demolish, rebuild, and expand its billboard:

(b)(1) In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted;  provided, that no change in the use of the land is undertaken by such industry or business.

(2) When the use permitted to continue to expand, or to be rebuilt pursuant to any subsection of this section is an off-premises sign, such use shall not preclude any new or additional conforming use or structure on the property on which the sign structure is located or on any adjacent property under the same ownership;  provided, however, that any such new or additional use or structure does not result in any violations of the applicable zoning restrictions other than those nonconformities associated with the off-premises sign as allowed under this subdivision (b)(2).

(c) Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning;  provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.  No building permit or like permission for construction or landscaping shall be denied to an industry or business seeking to expand and continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

(d) Industrial, commercial, or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto immediately preceding a change in zoning shall be allowed to destroy present

facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change; provided, that no destruction and rebuilding shall occur which shall act to change the use classification of the land as classified under any zoning regulations or exceptions thereto in effect immediately prior to or subsequent to a change in the zoning of the land area on which such industry or business is located. No building permit or like permission for demolition, construction or landscaping shall be denied to an industry or business seeking to destroy and reconstruct facilities necessary to the continued conduct of the activities of that industry or business, where such conduct was permitted prior to a change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

Distilled to its essential point, the dispute between the parties is whether the grandfather provisions of Tenn. Code Ann. § 13-7-208 apply when the local government action is taken as part of a redevelopment plan under Tenn. Code Ann. § 13-20-201 *et seq.* that affects preexisting zoning but is not taken as part of a revision in zoning under the local government's zoning authority.[3]

## C. INTERPRETATION OF RELEVANT STATUTES

In order to understand whether Tenn. Code Ann. § 13-7-208 was intended to protect property owners in the event of redevelopment under Tenn. Code Ann. § 13-20-201 *et seq.*, we must turn to the rules of statutory construction. The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Walker v. Sunrise Pontiac - GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008); *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000). To determine legislative intent, one must look to the "natural and ordinary meaning" of the language used in the statute itself without "forced or subtle construction that would limit or extend the meaning of the language." *Walker*, 249 S.W.3d at 309; *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). We must examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *T.R. Mills Contractors, Inc. v. WRH Enterprises,* LLC, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read

---

[3]Lamar argues quite correctly that Tenn. Code Ann. § 13-7-208 preempts any conflicting local ordinance. This position, however, begs the question whether Tenn. Code Ann. § 13-7-208 applies when the local enactment at issue is a redevelopment plan.

"without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)).

Courts are also instructed to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975). Courts must presume that the General Assembly selected these words deliberately and that the use of these words conveys some intent and carries meaning and purpose. *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)*; Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn.1984); *Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

It is critical to our analysis to note that although Tenn. Code Ann. § 13-7-208 pertains to zoning, the usual rule pertaining to construction of zoning provisions does not apply. When the issue is whether a zoning provision is applicable, *i.e.* whether it restricts the use of property, then any ambiguity must be resolved in favor of an owner's unrestricted use of his or her property. *State ex rel Morris v. Nashville*, 343 S.W.2d 847, 849 (Tenn. 1961); *421 v. Metropolitan Government*, 36 S.W.3d at 475-76. However, once it is established that a zoning restriction applies and the question is whether the grandfather provision of Tenn. Code Ann. § 13-7-208 creates an exception to an otherwise valid and applicable zoning restriction, then Tenn. Code Ann. § 13-7-208 must be construed against the landowner. In *Smith County*, our Supreme Court recently found:

> A grandfather clause is defined as "an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction." BLACK'S LAW DICTIONARY 629 (5th ed. 1979). A grandfather clause exception in a statute must be construed strictly against the party who seeks to come within the exception. *Teague v. Campbell County*, 920 S.W.2d 221 (Tenn. Ct. App. 1995).

*Id*., at \*6 (quoting *Lamar Tennessee, LLC v. City of Hendersonville*, 171 S.W.3d 831, 835-36 (Tenn. Ct. App. 2005) and *Coe v. City of Sevierville*, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000)); *Outdoor West of Tennessee, Inc. v. City of Johnson City*, 39 S.W.3d 131, 135 (Tenn. Ct. App. 2001); *Capps v. Metropolitan Government of Nashville and Davidson County*, M2007-01013-COA-R3-CV, 2008 WL 5427972, at \*9, (Tenn. Ct. App. Dec. 31, 2008)(no Tenn. R. App. P. 11 application filed); *B.F. Nashville v. City of Franklin*, M2003-00180-

COA-R3-CV, 2005 WL 127082 (Tenn. Ct. App. Jan. 21, 2005).[4] Consequently, while interpreting Tenn. Code Ann. § 13-7-208, we must construe it strictly against Lamar's position that the statute excuses Lamar from complying with the billboard prohibition in the Rutledge Hill Redevelopment Plan.

## D. Applicability Of The Grandfather Statute To Lamar's Permit Application

With the foregoing rules of construction in mind, we now turn our attention to the issue whether Tenn. Code Ann. § 13-7-208 is applicable when the land use revision results from a redevelopment plan under Tenn. Code Ann. § 13-20-201 *et seq*.

Tenn. Code Ann. § 13-7-208 is a grandfather statute, which allows all those already doing something to continue doing it, even though they would be prohibited by later enactments. *Coe v. City of Sevierville,* 21 S.W.3d at 243, (quoting BLACK'S LAW DICTIONARY, 629 (5th Ed. 1979)). The goal behind the enactment of Tenn. Code Ann. § 13-7-208 was "to protect established businesses from later-enacted municipal zoning which would exclude them." *Outdoor West of Tenn. v. Johnson City*, 39 S.W.3d at 131. A party seeking its protection has the burden of proving that its use is a preexisting nonconforming use which qualifies for the protection of the statute. *Coe*, 21 S.W.3d at 243; *Lamar Adver. of Tenn., Inc. v. City of Knoxville*, 905 S.W.2d 175, 176 (Tenn. Ct. App. 1995).

Generally, in order to qualify for the exception in Tenn. Code Ann. § 13-7-208, parties must make two threshold showings: (1) that there has been a change in zoning and (2) the use to which they put their land was permitted prior to the zoning change. *Lamar*, 905 S.W.2d at 176; *Rives v. City of Clarksville*, 618 S.W.2d 502, 505 (Tenn. Ct. App. 1981).

There is no dispute that the second prong of *Rives* is met, *i.e.*, prior to the redevelopment plan, the sign complied with applicable zoning ordinances. The question is whether there has been a "zoning change" by the redevelopment plan as that term is used in Tenn. Code Ann. § 13-7-208.

First, we must look to the plain meaning of the language in Tenn. Code Ann. § 13-7-208. Subsection (b) thru (d) specify that pre-existing uses of land are protected from changes in "zoning restrictions" and "zoning regulations." By its express terms, the statutory

---

[4]The Tennessee Supreme Court favorably cited *Outdoor West* in *Exxon Corp. v. Metropolitan Government of Nashville and Davidson County*, 72 S.W.3d 638, 642 (Tenn. 2002), when it held that the grandfather provision of Tenn. Code Ann. § 57-5-109 must be strictly construed against the one seeking its protection.

exception in Tenn. Code Ann. § 13-7-208 is limited to changes in "zoning" restrictions or regulations.

There is no dispute that the Rutledge Hill Redevelopment Plan was enacted pursuant to the statutory scheme authorizing local governments to redevelop blighted areas under Tenn. Code Ann. § 13-20-201[5] *et seq.* and not under the statutory scheme authorizing local government to enact zoning ordinances. In decisions outside the context of Tenn. Code Ann. § 13-7-208, courts have drawn a distinction between redevelopment plans and zoning. In *KLN Associates v. Metro Development & Housing Agency*, 797 S.W.2d 898 (Tenn. Ct. App. 1990), the court noted:

> The General Assembly has not limited local governments' authority to control the private use of property to the enactment of zoning ordinances. The counties and cities were first empowered to adopt zoning ordinances in 1935. However ten years later, the General Assembly granted them the power to redevelop blighted areas. In order to initiate a redevelopment project, Tenn. Code Ann. § 13-20-203(a)(1)(B) required the local legislative body to approve a "redevelopment plan" that "indicate[d] proposed land uses and building requirements in the area."

*Id.* at 902. The statutory authorization for redevelopment plans and urban renewal plans required preparation of plans containing zoning and planning changes. *Id.* The court noted, however, that simply because the plan contains zoning changes "does not transform it into a zoning ordinance." *Id.* at 903.

In order for a redevelopment plan to be effective, the plan approved by the governing body, among other things, must be "sufficiently complete" to "indicate its relationship to definite local objectives as to appropriate land uses" and "indicate proposed land uses" in the area. Tenn. Code Ann. § 13-20-203. There is no question that a redevelopment plan may affect preexisting zoning. A redevelopment plan is not, however, "zoning." The redevelopment plan was not undertaken pursuant to a local government's zoning authority and, as such, is not a part of the local government's zoning restrictions. Since the change contemplated by Tenn. Code Ann. § 13-7-208 is that of zoning, then by its plain terms a

---

[5]The trial court found that the Redevelopment Plan was an "alternative zoning process." On appeal, Metro explained the trial court misinterpreted a provision in the Plan that provided that a special zoning district may be considered within the Redevelopment District at a future date, not that the Plan itself was a special zoning district. Lamar does not challenge Metro's explanation in its brief and does not argue that the Redevelopment Plan is zoning, only that it affects zoning and is "tantamount to zoning."

redevelopment plan does not trigger its protections.[6] Consequently, under the plain meaning of the statute, it has no applicability to a redevelopment plan change.

However, Lamar argues quite logically that the Rutledge Hill Redevelopment Plan has the *effect* of changing the use to which the property of issue may be put and is thus "tantamount" to a zoning change. Lamar argues "if the Redevelopment Plan will impact or supercede current zoning regulations, then the Plan itself must be a zoning ordinance." While the appeal of this position is undeniable, we must, however, be mindful of the requirement that the grandfather provisions of Tenn. Code Ann. § 13-7-208(b) thru (d) must be strictly construed against Lamar as the party who seeks an exception to the requirements of the redevelopment plan. Tenn. Code Ann. § 13-7-208 allows exceptions to zoning restrictions, not to redevelopment plans that are "tantamount to zoning." Allowing Tenn. Code Ann. § 13-7-208 to create exceptions to anything other than zoning restrictions would be in contravention of its plain terms and in contravention of our obligation to construe the statute strictly. If the legislature had intended to allow pre-existing uses in the event of a redevelopment plan or other land use restriction, it could have done so.[7]

On a final point, Lamar argues that the BZA acted arbitrarily when it found that the failure by MDHA to act on the permit application constituted a denial. We do not find this constituted error for at least two reasons. First, the BZA may utilize its discretion to find that failure to approve the permit for a year was a denial. Second, as noted by the trial court, the BZA heard testimony from the MDHA that it refused to approve the permit because it violated the redevelopment plan. It would place form over substance to find this to be error warranting remand to the BZA.

## IV. CONCLUSION

The trial court is reversed. Costs of this appeal are taxed to Lamar Tennessee, L.L.C., d/b/a Lamar Advertising of Nashville and Frank C. May. for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.

---

[6] *See B.F. Nashville, Inc. v. City of Franklin*, M2003-00180-COA-R3-CV, 2005 WL 127082, *at 13n.10 (Tenn. Ct. App. Jan. 21, 2005) (finding that Tenn. Code Ann. § 13-7-208 was applicable to a sign ordinance enacted pursuant to zoning authority).

[7] The local government is free, of course, to provide exceptions in the redevelopment plan itself but we conclude that the legislature has not so required in Tenn. Code Ann. § 13-7-208